WORK *et al. v.* BEACH.

*(Supreme Court, Special Term, New York County.   December 3, 1890.)*

1. CONTRACTS—INTERPRETATION—PROMISE TO PAY "WHEN ABLE."
   In settlement of an action in which a defense had been interposed, and as the result of negotiations in which defendant recognized some obligation with regard to one of the two accounts sued on, but made no admission as to the extent or character of the obligation, the accounts were liquidated, and a balance stated as due, which defendant promised to pay "when I shall be able to do so." *Held,* that the promise was conditional, and not equivalent to an absolute promise to pay on demand, or in a reasonable time; and plaintiffs, to recover thereon, must plead and prove that defendant was able to pay.  Following 6 N. Y. Supp. 27.

2. SAME.
   In an action on such promise, the only evidence of defendant's ability to pay was that, during the three years since the promise was made, he had been in receipt of a judicial salary of $1,250 per month.  In the negotiations, defendant had informed plaintiffs of his financial condition, and his inability to pay any part of plaintiffs' claim out of his salary, so long as certain obligations specified continued.  His circumstances had not changed, and he was not, in fact, able to pay any part of the sum when the action was brought.  *Held,* that plaintiffs could not recover.

Action by Frank Work and others against Miles Beach.  See former decision, 6 N. Y. Supp. 27.

*Henry S. Bennett,* for plaintiffs.  *A. C. Brown,* for defendant.

BARRETT, J.   We must approach the consideration of this case from the stand-point of the rule laid down by the general term in disposing of the demurrer.  *Work* v. *Beach,* 53 Hun, 7, 6 N. Y. Supp. 27.   It was there held, upon full consideration, that the promise to pay "when able to do so," upon which this action is founded, was conditional, and that to entitle the plaintiffs to recover thereon they must plead and prove the fact of such ability.  The rule thus laid down is supported by many authorities, both in England and in this

country. *Cole* v. *Saxby*, 3 Esp. 159; *Davies* v. *Smith*, 4 Esp. 36; *Penn* v. *Bennet*, 4 Camp. 205; *Besford* v. *Saunders*, 2 H. Bl. 116; *Scouton* v. *Eislord*, 7 Johns. 36; *Bush* v. *Barnard*, 8 Johns. 407; *Wait* v. *Morris*, 6 Wend. 396; *Cartledge* v. *West*, 2 Denio, 378; *Everson* v. *Carpenter*, 17 Wend. 419; *Wakeman* v. *Sherman*, 9 N. Y. 85. See, also, *Thompson* v. *Lay*, 4 Pick. 48; *Proctor* v. *Sears*, 4 Allen, 95; *Chandler* v. *Glover*, 32 Pa. St. 509. The cogent reasoning of the presiding justice is almost identical with that of Judge GARDINER, speaking for the court of errors, in *Cartledge* v. *West*, *supra*. It was urged upon the argument there that the stating of the account was a new consideration from which the law would imply a promise. "Should this be admitted," said Judge GARDINER, "it by no means follows that a promise will be implied different in its character from that actually made in express terms. If the accounting was a good consideration, it will support the promise which the party really made, and not one of a different character. Suppose the defendants had given a promissory note, payable upon time, it will scarcely be insisted that the plaintiffs would be at liberty to abandon the note, and sue upon an implied promise. The defendants said they would pay it as soon as they had funds as assignees to do so, and this is all they said about it. If we reject this promise, we lay aside all the evidence in the case of an account stated. The promise was obviously conditional. An engagement to pay when the assignees, as such, were in funds is very different from a promise to pay forthwith, or generally, without regard to particular funds; but the learned circuit judge treated them as identical. There was no evidence that the defendants received any trust funds after this promise was made; but, if there had been, it should have been submitted to the jury." We find the same reasoning of the court of appeals, in *Wakeman* v. *Sherman*, 9 N. Y. 85. This case is important, too, as showing the necessity for strict fulfillment of the precise condition. There, the promise was to pay a debt which was barred by the statute of limitation, and an insolvent's discharge. The promise was conditional, namely, that the defendant "felt in honor bound to pay the debt, and would pay it, and at the end of one year, if successful in business, he would commence paying it." It was held that this was a special promise to commence payment, "on the condition of another year's successful business." The defendant was able to pay when he made this promise, "as he had the previous year made $40,000, according to his own admission;" and yet the court ruled that the plaintiff should have been nonsuited, because no evidence had been given to show the result of the year's business succeeding the promise. MASON, J., observed that "the defendant might receive a fortune by gift or inheritance, and not be liable upon such a promise. * * * The plaintiff utterly failed to show the fulfillment of the condition upon which the promise was made, and the law is well settled that he was not entitled to recover without it." Citing several of the cases, *supra*.

The plaintiffs, however, contend that the case made by the present pleadings and proofs differs from that presented by the demurrer to the original complaint, and that it now appears that the promise to pay when able was not interwoven with the admission and statement of the account. There is nothing in the amended complaint, or in the testimony, to warrant this view of the case. It proceeds mainly upon the unproved assumption that the defendant had no defense to the action which was pending against him when the negotiations for settlement, which resulted in the liquidation of the accounts and this promise to pay when able, were had. Upon this assumption, the plaintiffs claim that the promise was made simply because the debt was just, and was then due. They further claim that the promise to pay an honest and admitted debt, when the debtor can, is nothing more nor less than a promise to pay on demand, or, at the outside, within a reasonable time. The fallacy of these positions lies, not only in the unproved assumption, but in the complete ignoring of the valuable consideration which, upon the settlement, the plain-

tiffs received from the defendant for their acceptance of this very conditional promise. Indeed, but for the acceptance of this conditional promise, the settlement would have been entirely unilateral. The defendant gave up everything,—his defense to the existing suit, his profits upon his individual account, and his right to question the items of the joint account. What was he to receive in return? Upon the plaintiffs' theory, absolutely nothing. They got rid of his defense. They took his profits upon the individual account. They sold all his securities. They effected a balance in their own way, which, upon receipt of a final account, the defendant accepted blindly. And now they claim that the defendant's promise to pay that balance, "when able to do so," amounted to nothing, and was really an unconditional acknowledgment of an honest debt, and a promise to pay it on demand. This view of the transaction is wholly inadmissible. It is supported neither by the pleadings nor the proofs. The complaint contains a distinct averment that, in the action upon the joint account, the defendant "duly appeared and interposed a defense, contesting his liability on said account." In the interview which resulted in the settlement, there was no statement or admission which conflicted with this denial of liability. There was, it is true, a recognition of some obligation with regard to this joint account; general statements to the effect that the defendant desired in no event to shirk any responsibility, and that he would meet his obligations, when able to do so, to the extent of his power. But there was no admission as to the extent or character of these obligations; nothing, in fact, which, in case the settlement had fallen through, would have prevented the defendant from contesting every item in the joint account. On the contrary, Mr. Sturgis himself testifies that the defendant, at this interview, after speaking of the hardship of paying another person's proportion of the loss, declared that "he could fight" the plaintiffs in the action which they had brought against him on the joint account. The contention that the conditional promise was not interwoven with the account stated, or with the admission of its apparent balance, is equally unsupported by the proofs. This also is evident from Mr. Sturgis' testimony, which I quote: "I then made him the proposition as follows: I said: 'If you will give us a written instruction to close your two accounts, admitting the correctness of both accounts, so that the matter shall be reduced into a fixed debit sum, and if, after that is done, you will in writing admit the correctness of these accounts, and state that you owe this sum of money, and that you will pay the same when you are able to do so, my firm will withdraw the existing suit, and we will give you every possible opportunity and time to pay this sum of money; we will not oppress you, we will do nothing in any way to annoy you. On the other hand, our pleasant relations of the past can be resumed, and everything will be as harmonious as it is possible under the circumstances.'" And again: "After more desultory conversation very much on the same subject we parted friendly, and with the full understanding of exactly what should be done as outlined in the letter which you have asked me to identify." The letter referred to by Mr. Sturgis, written by the defendant, reads as follows: "It is my wish that you should sell, when favorable opportunity offers, the following securities in my accounts: $7,000 N. Y. C. & H. bonds 1st of 1903; 500 shares Southern & Atlantic Tel. stk.; 100 Hanover Bank stock; 800 Cincinnati & Sandusky, etc.; 80 Columbus S. & Cincinnati. When this is done, please consolidate my two accounts into the one standing in my own name, and let me have a statement of my indebtedness to your firm. I will then write a letter to you stating my obligation to pay this sum when I can do so, in accordance with our agreement on Saturday last." That this letter expressed the intention of both parties is evidenced by the fact that it was drafted by Mr. Sturgis himself, and sent to the defendant to be copied and signed. The defendant did copy and sign it, adding only the last words, "in accordance with our agreement on Saturday last." The sale of the securities followed, and, with the final account show-

ing the balance claimed in this action, the plaintiffs, wrote to the defendant as follows: "Will you now, as formerly agreed, write to us a letter stating your liability for this debit balance, joining with it an assurance that when able you will discharge the debt? We beg to add that we will be glad to listen to any proposition looking to a final adjustment of the account." Not having received an immediate reply to this letter, the plaintiffs wrote to the defendant, some 10 days later, the following letter: "We are without any reply from you to our letter of recent date. Will you kindly write to us, as previously agreed, and state the facts of the terms on which our financial relations now stand?" To this the defendant replied as follows: "I have received your final statement of account showing balance your due, in accordance with our agreement. To further complete compliance, I write to say that I will pay such balance when I shall be able to do so." Both from the testimony and the documents, then, it is apparent that the promise was to be, and was, conditional. That fact went to the root of the entire settlement. It was upon that consideration that the defendant permitted himself to be concluded by the accounts rendered, and it would be a fraud upon his rights, without opening these accounts and putting him back in his original position, to treat the promise as absolute, or even as a promise to pay within a reasonable time, whether able to do so or not. The conclusion thus arrived at brings me to the consideration of the serious question in the case, and that is, have the plaintiffs, as matter of fact, established the defendant's ability to pay? What was here meant by "ability to pay?" So far as judicial construction may serve as a guide, I have received but little assistance from the learned counsel on either side. They have contented themselves, in discussing this novel question, with expressing their own views upon the special facts of this case, without looking into the books or searching for authority. My own research has resulted in the discovery of but few cases where the question was considered, and they throw but little light upon the subject. *Cole* v. *Saxby, ubi supra,* is one of these. The promise there was to pay when able. In the course of the trial, which was before Lord KENYON, that learned judge said: "I remember a case before Lord MANSFIELD, in Staffordshire, in which he was of opinion that it was incumbent on the plaintiff to show that the defendant was of ability to pay at the time of the action brought." Thereupon counsel commenced to examine a witness with regard to the defendant's circumstances, but Lord KENYON said "it was not necessary to inquire further than his ostensible appearance and his circumstances as they were open to the observation of the world; that, if appearances were that he was of sufficient substance and ability, he should hold it sufficient to satisfy the promise." In *Davies* v. *Smith, ubi supra,* the promise was of like character. It appeared, from the direct testimony of a witness, that, by the death of his grandfather, the defendant had become possessed of £8,000 under his will. Lord KENYON interposed by saying: "That is not sufficient. The plaintiff should show that the defendant was of sufficient ability to pay when he was sued. I remember a case, in which Sergeant Nares was of counsel, which turned upon this point. He contended that every man was liable to pay his debts, for *solvat per corpus qui non potest crumena;* but that distinction is too fine." On cross-examination the witness said that, whatever benefit the defendant might have derived under the will, he was then in debt infinitely beyond it; and was, in fact, in consequence of his difficulties, forced to live out of the kingdom. Upon this, Lord KENYON nonsuited the plaintiff. *Everson* v. *Carpenter, ubi supra,* was a case of a promise to pay "as soon as he could." It was held to be conditional and unavailing, without proof of ability. COWEN, J., observed: "The plaintiff's counsel thinks the jury were warranted to draw the inference of ability from the fact of the defendant having a sign of business over his door when the notes were first demanded. * * * Such circumstance is too slight to raise a question for the jury."

The only judicial authority I have been able to find, supporting the plaintiffs' curious contention that the sheriff is the only judge who can solve the question of the defendant's ability to pay, is an old Kentucky case, *Kincaid:* v. *Higgins*, 1 Bibb, 396, (1809.) Mr. Justice BOYLE is there reported to have said that "a promise to pay as soon as the debtor possibly can is, in the contemplation of law, a promise to pay presently. The law supposes every man able to pay his debts, and, if the ability to pay was a question to be tried, the only practical mode of trial is per execution." The learned judge added, with grim humor, "and of this it is not yet too late for the defendant in the court below to have full benefit." This is the kind of doctrine that laymen sometimes term "practical common sense." It is open to the legal cavil that it alters a man's contract because of the difficulty of proving the essential fact upon which his contract liability rests. There are also cases where a promise to pay "when convenient" was considered, such as *Works* v. *Hershey*, 35 Iowa, 340, and *Lewis* v. *Tipton*, 10 Ohio St. 88. In *Works* v. *Hershey* the instrument read: "On demand after date, I promise to pay when convenient." The latter words, it was held, could not be construed to nullify the promise to pay on demand. "If any force be given them," said the court, "it will be be that the maker bound himself to pay within a reasonable time after the date of the note." The instrument which was considered in *Lewis* v. *Tipton* read as follows: "For value received, I promise to pay to the order of James & Tipton $95, when I can make it convenient, with ten per cent. interest until paid." Upon this the court observed: "It is conceded that the intention of the parties to a contract cannot prevail if directly contrary to the plain sense of the words employed, but, when the intention is sufficiently apparent, effect should be given to that intent, though some violence be done to the words. The payee certainly parted with its value to secure the promise, and the maker not only admits this, but promises to pay interest thereon while the payment is forborne. If the convenience of the maker is to be consulted, he might never find it altogether convenient to pay, and the construction leads to results certainly not contemplated by the parties when the note was written." *Zimmer* v. *Railway Co.*, 6 N. Y. Supp. 316, was the case of a corporate promise to pay conditioned upon the corporation being in funds. VAN BRUNT, P. J., said that the plaintiff "took the risk of the corporation having the money, and if, for any reason short of an actual intent to defraud, it has not got the money, the plaintiff cannot recover by the very terms of his contract." It may fairly be deduced from these cases that the plaintiffs were bound to prove the defendant's ability to pay at the commencement of the action, and that such ability could be shown by circumstances, as well as by direct evidence. Beyond this there is no fixed rule. Each case must depend upon the terms of the contract read in the light of the surrounding circumstances. Substantial proof of ability, within the intent and meaning of the parties, must be given, and, although that proof may, in the nature of things, be difficult, it is none the less requisite. By taking a conditional obligation, the condition being itself founded upon a valuable consideration, the obligee accepts the burden imposed upon him of establishing fulfillment of the condition before he can recover. In the present case, the only evidence which the plaintiffs have given tending to show ability is the defendant's admission that, since the promise was made, he has been in receipt of a judicial salary of $1,250 per month. The defendant testified that this salary was expended, month by month, as received, and that he had not a penny of it at the time of the commencement of this suit. It was so expended to meet burdens and obligations which he specified in the interview with Mr. Sturgis which led to the settlement. This included his personal expenses, for which a reasonable sum was utilized. And here I may say it was the defendant's duty to the people, whose servant he is, to maintain himself decently, and in a manner suitable to his judicial station. Such expenditures necessarily consumed the

entire amount received, and there was certainly at no one time actual ability to pay this debt. The plaintiffs, however, contend that the salary received by the defendant should be aggregated, and the totality treated as a lump sum in his hands. They reason somewhat in this wise: In the three years between the making of the promise and the commencement of the suit, the defendant received in money $45,000. That was more than enough to pay their claim, and, consequently, ability is shown. The answer to this position is that nothing of the kind was contemplated when the settlement was made. The plaintiffs at that time knew the defendant's financial condition. He made a full disclosure to Mr. Sturgis of his precise situation, informed that gentleman of all his obligations and burdens, and pointed out the great difficulty which he experienced, notwithstanding the curtailment of personal and household expenses, in making both ends meet. By the latter expression, he explained to Mr. Sturgis that he meant in paying these obligations and assuming these burdens from his judicial salary. The defendant's inability to pay any part of the plaintiffs' claim out of his salary, so long as these specified burdens and obligations lasted, was thus fully recognized by both parties, and their understanding of the adjustment plainly excluded that salary as an element of ability. The contract must be read in the light of the surrounding circumstances, and these circumstances plainly indicate the real intention and understanding of the parties. That understanding undoubtedly was that the defendant should be required to pay only when his circumstances were changed for the better, either by an accession of fortune or a decrease of obligation. If, notwithstanding the disclosure of the specified burdens and obligations, and the fact, also made known to Mr. Sturgis, that they consumed every penny of the defendant's judicial salary, resort to this salary was contemplated to the exclusion of some part of such burdens and obligations, it would have been easy to say so, and to express the understanding upon that head in the contract. Indeed, Mr. Sturgis would give us to understand that this was contemplated, a statement which the defendant explicitly denies. This is the only important conflict of testimony in the case. The parties are in equipoise on that head, and I see no reason to prefer one to the other, when it comes to the point of personal credibility. The probabilities, however, all point in favor of the denial rather than the affirmation, for it certainly is most unlikely that a shrewd man of business, seeking an obligation to pay out of a particular fund, should have omitted to specify the fund in the written contract which embodied the obligation. If it had been intended to appropriate a part of the defendant's salary it would certainly have been natural to so provide in the contract. Nay, more, we might even expect to see the amount which the defendant was annually to set apart specified with reasonable precision. It appears from the defendant's uncontradicted testimony that he was not able to pay the liquidated balance of the plaintiffs' account, or any part of it, at the time when this suit was brought. This, indeed, is not disputed. The plaintiffs' claim is that the defendant should have been able to pay at that time, not that he really was able. But this was not his contract. The claim that he should have been able to pay is fully met by the uncontradicted testimony that his circumstances had not changed in the least between the date of the promise and the time of the commencement of the action. His income had not increased; his enumerated burdens and obligations had not decreased. It was therefore as difficult at that time to make both ends meet as it was when the defendant explained his situation to the plaintiffs, and when the latter, with full knowledge of that situation, accepted the promise to pay "when able," in consideration of the valuable concessions made to them.

The learned counsel for the plaintiffs complains that, while the defendant was permitted to show the unchanged continuance of these burdens and obligations, he was not permitted to inquire whether the objects of the defendant's

duty were still living.˙ But the learned counsel's question was immaterial, both on principle and on the authorities to which I have referred, for it related to the time of trial. It would have been proper and would have been admitted if limited to the time of the commencement of the action. I am constrained to find, therefore, as matter of fact, that the plaintiffs have failed to establish the defendant's ability to pay either within the letter or the spirit of the contract. The case was submitted to me upon this head as to a jury. The learned counsel for the plaintiffs in his brief refers to the court as a court of equity, and seems to treat this action as in the nature of a bill to reach surplus income. This, of course, is a wholly erroneous idea. The action is strictly legal. If the plaintiffs are entitled to recover at all, it is solely upon the promise. Upon proof of ability, they would be entitled to recover the entire amount of their claim. Upon failure to make that proof, they necessarily fail *in toto*. It follows that the judgment must be for the defendant, dismissing the complaint, with costs.